**Robert MORGAN, Petitioner,**

v.

**Dominick SALAMACK, Edgecomb Correctional Facility, and Robert Abrams, Attorney General for the State of New York, Respondents.**

**No. CV 82–1781.**

United States District Court,
E.D. New York.

July 18, 1983.

Andrew M. Lawler, New York City, for petitioner.

Robert Abrams, Atty. Gen. of New York by Susan L. Yarbrough, Asst. Atty. Gen., New York City, for respondents.

## MEMORANDUM & ORDER

PLATT, District Judge.

Petitioner, Robert Morgan, has submitted this application pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus, alleging that his State conviction must be set aside on the ground that he was denied due process of law.

Petitioner and two co-defendants were tried in February, 1979 in the New York Supreme Court, Queens County, on charges of robbery in the first degree and attempted robbery in the second degree. Following a jury trial, all defendants were convicted of robbery in the first degree and acquitted of attempted robbery in the second degree.[1]

Petitioner then moved for an order pursuant to New York Criminal Procedure Law § 440.10(1)(g) vacating the judgment of conviction and directing a new trial based upon new evidence discovered after the entry of judgment. He also moved for an order pursuant to § 440.10(1)(h) of that law vacating the judgment of conviction on the ground that the conviction was based in part upon the complainant's perjurious testimony elicited by the prosecution on direct examination and thus was obtained in violation of his right to due process of law. Both motions were denied by the State trial court in all respects, and leave to appeal that denial was denied by the Appellate Division, Second Department. Petitioner, asserting the same grounds raised in his State motions, now seeks a writ of habeas corpus from this Court.[2]

FACTS

Petitioner's application is based on the following set of facts. The complainant, Mr. Alfred Teo, testified at the State trial that he and his business partner were driving home from their place of business during the early evening of February 7, 1978, when someone threw a heavy object through the side window of his van. Mr. Teo further testified that when he stopped the van and got out to investigate, the defendants attacked and beat him, stealing his watch and attempting to steal his wallet. (Trial transcript at 58–65). Petitioner and his co-defendants, however, testified that on the evening in question they were walking along a street in their neighborhood when one of them was nearly struck by a van, and when they shouted at the driver and banged on the van, the driver got out of the van, pointed a gun at them and threatened to shoot them (Tr. at 624–35; 768–73; 797–99). Mr. Teo, though, denied that he was in possession of a gun at the time of the incident.[3] He also testified (on direct examination) that he had never been arrested (Tr. at 51, 57), that he had a valid pistol carrying permit (Tr. at 55, 115, 116, 145, 146, 148, 150), and that he had never experienced any problems with the gun licensing agency (Tr. at 56, 57, 146).

Subsequent to the conviction, petitioner obtained, through the New York Freedom of Information Act, records of the New York City Police Department regarding Mr. Teo's arrest record and applications for gun permits. The arrest record revealed that Mr. Teo had in fact been arrested on July 23, 1976 in Queens, New York for reckless endangerment and illegal possession of a weapon. In addition, in January, 1979, Mr. Teo had been issued a summons by the New York City Police Department for the unlawful discharge of a firearm in connection with an alleged attempt by several youths to steal his car. Finally, Police Department records also revealed that though Mr. Teo was, at one time, in possession of a target pistol permit,[4] his license was suspended and his weapons were removed from him by the License Division following the above noted arrest. Subsequently, in 1977, his target license permit was re-issued; however, in 1978, his appli-

---

1. Petitioner was sentenced to an indeterminate term of imprisonment not to exceed four years in a State correctional facility.

2. In a Memorandum and Order dated February 22, 1983, this Court initially dismissed petitioner's application on the ground that petitioner had failed to exhaust State remedies. However, in an order dated April 14, 1983, this Court recalled the earlier decision and ruled that petitioner had exhausted State remedies.

3. Mr. Teo further testified that he had not physically carried a gun since before January 1, 1978 (Tr. at 276).

4. A target pistol permit authorizes its holder to use the firearm solely at an authorized range, and the weapon must be transported to and from the range unloaded and in a locked case.

cation for a license to *carry* a weapon was denied.[5]

With respect to Mr. Teo's arrest in July, 1976, this Court heard the testimony of Mr. Donald Schulze, the complainant in that case. Mr. Schulze testified that in May, 1976 he and some friends were driving on a highway in Queens when they were nearly forced off the road by a passing station wagon. Mr. Schulze further testified that when he and his friends subsequently caught up with the station wagon and shouted obscenities at the driver, the driver fired at them with a gun.[6] (Hearing of January 31, 1983, at 7–9). The station wagon was eventually traced to Mr. Teo, who was then arrested. All charges against Mr. Teo, however, were later dropped.

Thus, based upon this newly discovered evidence, petitioner asserts that Mr. Teo's perjury as to his arrest record, his lack of a valid carrying permit, and his problems with the licensing agency affected the verdict at trial and therefore, under the United States Supreme Court's decision in *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), violated his constitutional right to due process of law.

## DISCUSSION

In *United States v. Agurs, supra,* the Supreme Court held that the standards that courts apply when reviewing potential due process violations arising from prosecutorial nondisclosure of exculpatory evidence must vary with the factual circumstances. The *Agurs* Court employed three distinct categorie to delineate the due process issues in this area:

(1) Where the prosecution knew or should have known that perjured testimony was used to obtain the conviction, the conviction must be set aside

if any reasonable likelihood exists that the false testimony could have affected the judgment of the jury. 427 U.S. at 104, 96 S.Ct. at 2397;

(2) Where a pretrial request for specific evidence was made and the prosecution failed to disclose that evidence, the conviction must be set aside if there is a possibility that the suppressed evidence might have affected the outcome of the trial. *Id.* at 106, 96 S.Ct. at 2398; and

(3) Where no request, or only a general request for "all 'Brady' material" has been made, the conviction must be set aside if the omitted evidence creates a reasonable doubt as to the guilt of the defendant that did not otherwise exist. *Id.* at 112–13, 96 S.Ct. at 2401–02.

Petitioner, asserting that the prosecutor at his trial "should have known" that Mr. Teo perjured himself on the stand, focuses on the first *Agurs* category and thus argues that his conviction must be set aside because a reasonable likelihood exists that the false testimony could have affected the judgment of the jury. For the following reasons, we hold that petitioner's reliance on the standard set forth in the first *Agurs* category—or on a standard set forth in any of the three *Agurs* categories—is inapposite.

In its discussion of the first category involving prosecutorial nondisclosure of exculpatory evidence, the *Agurs* Court stated:

[T]he Court has consistently held that a conviction obtained by the *knowing use* of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.... In those cases the Court has applied a strict standard of

---

5. In March, 1979, Mr. Teo's target pistol permit was again suspended on the basis of the circumstances surrounding the January, 1979 unlawful discharge of a firearm summons.

6. Mr. Schulze also testified that he heard Mr. Teo's explanation of the incident at a licensing agency hearing, at which Mr. Teo stated that

after he "unintentionally" cut off a car, the car caught up with him, and its occupants threw beer cans at his car and attempted to hit him with a large stick they were swinging out of the window of the car. (Hearing of January 31, 1983, at 11–13).

**4**

materiality, not just because they involve *prosecutorial misconduct,* but more importantly because they involve a corruption of the truth-seeking function of the trial process. *Since this case involves no misconduct* ... the test of materiality followed in ... [those] ... cases is not necessarily applicable to this case.

*Id.* at 103–04, 96 S.Ct. at 2397–98 (Emphasis added) (footnotes omitted). No suggestion has been made in this case of any misconduct by the prosecutor—indeed petitioner concedes that the prosecutor had no knowledge of Mr. Teo's perjury (Petitioner's Memorandum of Law, June 15, 1983, at p. 3). Thus, because the Court's language clearly indicates that this standard of review was intended to apply only to situations of deliberate bad faith on the part of the prosecutor, it would be error to apply that standard in this case.[7]

█ Moreover, this case does not fit into the second or third categories set forth in *Agurs* either. The second category, which addresses the situation where the defendant requests specific exculpatory evidence, is not, with one minor exception,[8] applicable here. The third category, in which a general request for exculpatory evidence is made by the defendant, is also not applicable here. Although petitioner did make a general request, the specific evidence now in question was never actually "in the possession of the prosecutor." As the Court stated in its discussion of this third category:

In many cases, however, exculpatory evidence *in the possession of the prosecutor* may be unknown to defense counsel. In such a situation he may make no request at all, or possibly ask for "all *Brady* material" or for "anything excul-

patory." ... If there is a duty to respond to a general request of that kind, it must derive from the obviously exculpatory character of certain evidence *in the hands of the prosecutor.*

427 U.S. at 106–07, 96 S.Ct. at 2398–99 (Emphasis added).

█ Thus, this case does not fall into any of the three categories delineated in *Agurs.* That decision does, however, refer to a separate, "fourth" category, in which the evidence has "simply been discovered from a neutral source after trial." 427 U.S. at 111, 96 S.Ct. at 2401. With respect to evidence falling into this fourth category, the Court noted that courts must not set aside the conviction unless the newly discovered evidence "probably would have resulted in acquittal." *Id.* Upon our review of all the evidence at trial, however, we are simply unable to conclude that the newly discovered evidence here probably would have resulted in acquittal.

Petitioner was convicted of the crime of robbery in the first degree. Thus, whether or not Mr. Teo was in possession of a gun at the time of the incident had no direct bearing on the *substantive* question presented to the jury—whether petitioner and his companions forcibly removed a watch from Mr. Teo. Rather, the new evidence upon which this petition is based relates only to the credibility of Mr. Teo's testimony at the trial. If Mr. Teo's testimony had been the sole evidence presented by the State, petitioner's contentions here might be of merit. However, other evidence presented by the State at petitioner's trial substantially corroborated Mr. Teo's testimony. Mr. Shun-jen Siu, Mr. Teo's business partner who was riding in the van

---

7. Although the Court's use of the "should have known" language suggests that, in certain limited situations, the prosecutor's actions (or non-actions) should be evaluated in an objective context, we are unwilling to extend the "should have known" principle beyond the Supreme Court's holding in *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (nondisclosure of promise made by prosecutor who first dealt with key government witness that witness would not be prosecuted if he cooperated with government constituted due process

violation even though promise was never communicated to second prosecutor who actually tried case and second prosecutor had no knowledge of it).

8. Although petitioner at the trial specifically requested a copy of Mr. Teo's gun permit (Trial transcript at 49), we hold that this minor piece of evidence does not satisfy even the "might have affected the outcome of the trial" standard.

on the night of the incident, testified to substantially the same story as was presented by Mr. Teo (Trial transcript, at 469–77). Furthermore, the extensive injuries suffered by Mr. Teo were verified by hospital records that were admitted into evidence. Finally, a police officer who investigated Mr. Teo's complaint on the night of the incident testified that he searched Mr. Teo, Mr. Siu and the van and that he did not find a gun (Tr. at 400–01).

In conclusion, we do not believe that this newly discovered evidence probably would have resulted in acquittal if it had been presented at petitioner's trial. Accordingly, petitioner's application for a writ of habeas corpus must be, and hereby is, denied.

SO ORDERED.